UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No. 3:19-cr-39 |
| v. | : | Judge Thomas M. Rose |
| SHERMAN A. BROWN, | : | |
| Defendant. | : | |

___

**ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS (DOC. 16)**
___

This case is before the Court on the Motion to Suppress (Doc. 16) (the "Motion"), filed by Defendant Sherman A. Brown ("Brown"). Brown seeks an order "suppressing any and all evidence seized as a result of the … stop and search, unsupported by probable cause or reasonable suspicion." (Doc. 16 at PAGEID # 35.) The Court held an evidentiary hearing for the Motion on August 1, 2019. (Doc. 26.) On September 12, 2019, Brown filed a post-hearing brief in support of the Motion. (Doc. 27.) On October 2, 2019, the Government filed a post-hearing brief in opposition to the Motion. (Doc. 28.) On October 15, 2019, Brown filed a reply brief in response to the Government's post-hearing brief. (Doc. 29.) The matter is ripe for review. For the reasons discussed below, the Court **DENIES** the Motion.

**I.     FACTUAL FINDINGS**

The following findings are made based on the evidence submitted by the parties and the testimony at the August 1, 2019 hearing.

On February 20, 2019, at approximately 1:00 p.m., Dayton Police Department officer Mark

1

D. Orick ("Officer Orick") was driving his police cruiser westbound on Fifth Street in Dayton, Ohio. (Doc. 26 at PAGEID # 82, 85-86.) He was by himself at the time. (*Id.* at PAGEID # 91.) As Officer Orick approached College Street, he observed from his cruiser a silver Nissan Altima automobile (the "Vehicle") parked on the opposite side of the street (south curb facing eastbound). (*Id.* at PAGEID # 88-89, 117.) Officer Orick was familiar with the neighborhood, which he testified was known to be a high crime area. (*Id.* at PAGEID # 86-87.)

Officer Orick believed that the Vehicle had excessively tinted windows in violation of an Ohio statute. (*Id.* at PAGEID # 89-90.) He testified that, as he drove past the Vehicle, he observed exhaust coming from its rear, emitting a white cloud of smoke (indicating that the Vehicle's engine was running), and that there were at least two people in the Vehicle. (*Id.*; *see also* Government Exhibit 3 ("vehicle was parked on the south curb w/the engine running").) Officer Orick proceeded to drive past the Vehicle and then made a U-turn at the nearby intersection of West Fifth Street and James H. McGee Boulevard in order to return to the Vehicle, pull up behind it, and make contact with its driver. (Doc. 26 at PAGEID # 89.)

Officer Orick testified that his purpose was to issue a citation for what he believed to be excessive window tint in violation of Ohio Revised Code ("O.R.C.") § 4513.241. (*Id.* at PAGEID # 84, 93-94.) Officer Orick did not use a tint meter to determine the level of window tint on the Vehicle. (*Id.* at PAGEID # 124-25.) Officer Orick testified that Dayton Police Department policy does not mandate the use of a tint meter in order to issue a citation for violating O.R.C. § 4513.241. (*Id.* at PAGEID # 84, 130-31.) Additionally, Officer Orick testified that he had received training on detecting motor vehicles that have excessive tint on their windows, he is familiar with O.R.C. § 4513.241 and its standards, and he had issued several hundred citations for excessive window tint during his eleven-year career. (*Id.* at PAGEID # 83-84, 130-31.)

As he returned to the Vehicle, Officer Orick turned on his police cruiser's overhead emergency lights, which automatically activated his police cruiser's camera system. (*Id.* at PAGEID # 91-94.) By the time he had pulled behind the Vehicle, its engine was not running. (*Id.* at PAGEID # 119.) A person (later identified to be Brown) exited the driver's side of the Vehicle, and a second person (later identified to be Mark Smith ("Smith")) exited the front passenger side of the Vehicle and started walking toward a home. (*Id.* at PAGEID # 93.)

Officer Orick attempted to make contact with Brown and Smith, ordering Brown to come to him. (*Id.* at PAGEID # 93-98; Government Exhibit 1.) Brown started walking toward Officer Orick, but then stopped and, despite Officer Orick's direct commands to come to him, Brown turned and walked away from Officer Orick. (*Id.*)

According to Officer Orick, based on the refusal to comply with his orders, coupled with an increasing concern for his personal safety (including being outnumbered two to one), Officer Orick approached Brown and restrained him by grabbing the back of his waistband and pulled him back to a safer position. (*Id.*) Brown continued to argue with Officer Orick, as did Smith. (*Id.*) Officer Orick un-holstered his taser and warned Smith to stop moving. (*Id.*) Officer Orick wanted Smith to stop moving because he did not know if Smith had a weapon or was going to retrieve a weapon from the nearby house. (Doc. 26 at PAGEID # 95-96.) He was having difficulty maintaining control of Brown and Smith. (*Id.* at PAGEID # 95-97; Government Exhibit 1.) During this sequence of events, despite orders from Officer Orick to put his hands on the Vehicle, Brown tossed to Smith what was later determined to be keys to the Vehicle. (Government Exhibit 1; Doc. 26 at PAGEID # 98, 110.)

Dayton Police Department officers Michael Schwartz and Luke Scott then arrived on the scene to provide backup to Officer Orick. (Doc. 26 at PAGEID # 96-99, 102, 110-11; Government

3

Exhibit 1.) Brown was detained, handcuffed, and placed in the rear of Officer Orick's police cruiser. (*Id.*) While he escorted Brown to the cruiser in handcuffs, Officer Orick notified Brown that he was being stopped for a window tint violation. (Government Exhibit 1; Doc. 26 at PAGEID # 96.) Brown was asked to identify himself, but Brown refused to do so or to provide any identification. (Doc. 26 at PAGEID # 96, 99, 101.) Officer Orick testified that he needed Brown's identification to properly issue a citation for the excessive window tint violation. (*Id.* at PAGEID # 100-01.) Officer Orick also testified that, due to a continued refusal to identify himself, Brown was arrested for obstructing official business. (*Id.* at PAGEID # 99-101.) Officer Orick transported Brown to the Montgomery County Jail, where Brown's identity was determined and he was issued a citation for a window tint offense in violation of O.R.C. § 4513.241. (*Id.* at PAGEID # 98-99; Government Exhibit 3.)

During his testimony, Officer Orick was shown video taken from his police cruiser. (*See, e.g.,* Doc. 26 at PAGEID # 108-112, 121-23.) He admitted that, in the video, no exhaust could be seen coming from the Vehicle, even when the Vehicle was started and driven onto a ramp for purposes of towing it. (*Id.* at PAGEID # 121-22.) Officer Orick testified that, during his eleven years with the Dayton Police Department, there had been several instances in which the police cruiser camera video failed to capture and record all that a human eye would see. (*Id.* at PAGEID # 84, 129.) Also, the police cruiser video only shows the time period after Officer Orick started turning his cruiser around to pull up behind the Vehicle, after he had seen exhaust coming from the rear of the Vehicle while initially driving past it. (Government Exhibit 1 (video starts with police cruiser making U-turn).)

After Brown was placed in the back of the police cruiser, Officer Scott observed in plain view, through the front un-tinted windshield of the Vehicle, the handle of a handgun sticking out

from the front of the driver's seat.  (Doc. 26 at PAGEID # 102-05.)  After obtaining the Vehicle's keys from where they had fallen out of Smith's pants, Officer Orick gained access to the Vehicle's passenger compartment.  (*Id*.)  The officers located a loaded FNS handgun under the driver's seat.  (*Id*.)  The officers did not have consent or a warrant to conduct a search of the Vehicle.  (*Id*. at PAGEID # 113.)

The Vehicle was determined to be registered to a third party named Brandon Chapman.  (*Id*. at PAGEID # 101-02.)  Officer Orick testified that, per Dayton Police Department policy, he ordered the Vehicle to be towed from the scene and an inventory of the Vehicle's contents be made.  (*Id*. at PAGEID # 101, 106; Government Exhibit 4.)  Officer Orick testified that the Vehicle was towed because the driver of the Vehicle (Brown) had been arrested.  (*Id.* at PAGEID # 106, 114, 117.)  After ordering the tow, Officer Orick and other officers started the inventory procedure, and it was pursuant to the inventory procedure that the handgun was confiscated.  (*Id*. at PAGEID # 115-16.)

On February 28, 2019, the Grand Jury returned a single-count indictment against Brown in this case.  (Doc. 11.)  The count charges Brown with being a felon in possession of a firearm in violation of 18 U.S.C. § § 922(g)(1) and 924(a)(2).  (*Id.*)  On March 8, 2019, Brown appeared for arraignment on the indictment and entered a plea of not guilty.  (Doc. 14.)  On October 22, 2019, the Grand Jury returned a single-count superseding indictment against Brown for violation of the same statutory sections, 18 U.S.C. § § 922(g)(1) and 924(a)(2).  (Doc. 31.)

## II.    ANALYSIS

The Fourth Amendment states:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "The text of the Amendment thus expressly imposes two requirements. First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011).

A search conducted without a warrant issued upon probable cause is per se unreasonable subject only to a few specifically established and well-delineated exceptions. *United States v. Doxey*, 833 F.3d 692, 703 (6th Cir. 2016). "The exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of an unlawful search." *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) (*citing Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963)).

A criminal defendant may seek the suppression of evidence by filing a pretrial motion with the Court. FED. R. CRIM. P. 12(b)(3)(C). "It is well settled that in seeking suppression of evidence the burden of proof is upon the defendant to display a violation of some constitutional or statutory right justifying suppression." *United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003); *U.S. v. Blakeney*, 942 F.2d 1001, 2015 (6th Cir. 1991) (in the context of a motion to suppress, the moving party has the burden of establishing that the evidence was secured by an unlawful search). However, "[t]he Government has the burden of proof to justify a warrantless search." *United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002).

In his Motion, Brown makes three arguments. First, he argues that the initial stop was without reasonable suspicion or probable cause. (Doc. 27 at PAGEID # 143.) Second, he argues that his arrest was illegal because it was made without probable cause (and therefore, any evidence

obtained because of his arrest must be suppressed). (*Id*. at PAGEID # 147.) Third, he argues that the search of the Vehicle was unlawful. (*Id*. at PAGEID # 149.) The Court addresses each of these arguments below.

### A. The Initial Stop

Brown's first argument is that Officer Orick's initial stop was without reasonable suspicion or probable cause. (Doc. 27 at PAGEID # 143.) "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996); *see also United States v. Davis*, 430 F.3d 345, 352 (6th Cir. 2005) ("so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resultant stop is not unlawful and does not violate the Fourth Amendment") (internal quotation marks omitted).

"Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Ferguson*, 8 F.3d 385, 392 (6th Cir. 1993). "Probable cause is a flexible, common-sense standard." *Id.*, *quoting Texas v. Brown*, 460 U.S. 730, 742 (1983). Probable cause is determined by the totality of the circumstances, is fact-dependent, and will turn on what the officer knew at the time he or she made the stop. *United States v. Puckett*, 422 F.3d 340, 342-43 (6th Cir. 2005). The totality-of-the-circumstances analysis includes a realistic assessment of the situation from the officer's perspective. *Id.*, *citing Ferguson*, 8 F.3d at 392. *See also Davis*, 430 F.3d at 352 (the requirement of probable cause is satisfied where the facts and circumstances within the officer's knowledge and of which he or she had reasonable trustworthy information are sufficient to demonstrate that an offense has been or is being committed).

Ohio law sets forth parameters on the amount of tinting allowed on the side windows of motor vehicles. Ohio Administrative Code § 4501-41-03(A)(3) provides the following rule:

7

> (A) No person shall operate, on any highway or other public or private property open to the public for vehicular travel or parking, lease, or rent any motor vehicle that is required to be registered in this state with any sunscreening material, or other product or material which has the effect of making the windshield or windows nontransparent or would alter the windows' color, increase its reflectivity, or reduce its light transmittance, unless the product or material satisfies one of the following exceptions: …
>
> (3) Any sunscreening material or other product or material applied to the side windows to the immediate right or left of the driver, so long as such material, when used in conjunction with the safety glazing materials of such windows, has a light transmittance of not less than fifty per cent plus or minus three per cent and is not red or yellow in color.

That rule falls under an Ohio statute, O.R.C. § 4513.241, that includes the following:

> (C) No person shall operate, on any highway or other public or private property open to the public for vehicular travel or parking, lease, or rent any motor vehicle that is registered in this state unless the motor vehicle conforms to the requirements of this section and of any applicable rule adopted under this section.
>
> (D) No person shall install in or on any motor vehicle, any glass or other material that fails to conform to the requirements of this section or of any rule adopted under this section.

O.R.C. § 4513.241(C) and (D). Another statute provides the definition of the term "operate" used in O.R.C. § 4513.241(C): "As used in this chapter and in Chapter 4513 of the Revised Code … 'Operate' means to cause or have caused movement of a vehicle, streetcar, or trackless trolley." O.R.C. § 4511.01(HHH). Thus, the term operate "employs both the present tense ('to cause') and the past tense (to 'have caused') in relation to the movement of a vehicle." *State v. Anderson*, 2017-Ohio-8641, 2017 Ohio App. LEXIS 5090, at *8 (Ohio Ct. App. 2017) (*quoting* O.R.C. § 4511.01(HHH)). Whether Brown "caused" movement of the Vehicle is a fact that may be proved by circumstantial evidence. *Id*.

In *United States v. Shank*, 543 F.3d 309 (6th Cir. 2008), the Sixth Circuit found that police officers had a proper basis to initiate a traffic stop due to excessive window tinting. *Id*. at 313. In *Shank*, (1) the officers observed dark tinting on the vehicle's windows, (2) estimated that the

amount of light that could pass through the windows violated the applicable law, and (3) believed that the windows were illegally tinted based on substantial prior experience in enforcing that traffic regulation. *Id*. The Court found that "[d]ue to the officers' familiarity with window tinting and their estimate that the vehicle was tinted substantially darker than permitted by law, we agree with the district court's determination that the officers had a probable basis to initiate the traffic stop." *Id*. The Court did not consider whether or not the officers used a tint meter or other measuring device in making its finding. *Id*; *see also State v. Bowie*, 2007-Ohio-4297, 2007 Ohio App. LEXIS 3834, at *5 (Ohio Ct. App. 2007) (finding that, where a police officer testified he had extensive experience with tinted windows and that based on this experience he knew from looking at the windows in the car driven by the defendant that they were too dark by legal standards, the officer at least had a reasonable suspicion that the windows were illegally tinted and, therefore, the officer was justified in stopping the car).

The Court finds that Officer Orick had sufficient probable cause to believe that Brown had violated a traffic law (i.e., excessive window tinting), therefore permitting Officer Orick to make a stop. *Whren*, 517 U.S. at 810; *Davis*, 430 F.3d at 352. As set forth above, Officer Orick received training on detecting motor vehicles that have excessive tint on their windows, he was familiar with O.R.C. § 4513.241 and its standards, and he had issued several hundred citations for excessive window tint during his eleven-year career. He also testified that he saw the Vehicle, believed that it had excessively tinted windows, and observed exhaust coming from its rear as he drove past it (indicating that the Vehicle was operating). The police cruiser video shows that Brown was exiting the driver's side of the Vehicle with a set of keys, after Officer Orick had made a U-turn and as he

was pulling up behind the Vehicle. Based on the totality of the circumstances, Officer Orick had probable cause to make the stop.[1]

### B. **Brown's Arrest**

Brown's next argument is that Officer Orick lacked the probable cause necessary to arrest Brown without a warrant. (Doc. 27 at PAGEID # 147.) Brown argues that "[b]ecause Officer Orick placed Mr. Brown under arrest solely for the non-affirmative act of failing to provide his name, the arrest was not supported by probable cause. As a result, Mr. Brown respectfully requests that all evidence obtained from the illegal arrest … be suppressed as a matter of law." (*Id.* at PAGEID # 149.)

The Fourth Amendment requires probable cause for an arrest. The Supreme Court recently set forth the following standard concerning warrantless arrests:

> Because arrests are 'seizures' of 'persons,' they must be reasonable under the circumstances. A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence. To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause it not a high bar.

*District of Columbia v. Wesby*, 199 L.E.2d 453, 138 S.Ct. 577, 585-86 (2018) (internal quotation marks and citations omitted). *See also Atwater v. City of Lago Vista*, 532 U.S. 318, 353 (2001) ("the standard of probable cause applies to all arrests, without the need to balance the interests and circumstances involved in particular situations. If an officer has probable cause to believe that an

---

[1] The main case relied on by Brown to support his argument is *State v. Hill*, 2006-Ohio-6118, 2006 Ohio App. LEXIS 6091 (Ohio Ct. App. 2006). However, that case is distinguishable. In *Hill*, at no time did the officer issue a ticket for a window tint violation (or any other traffic violation), the stop took place during the late evening (7:45 P.M. on October 29), and there was testimony that there was nothing illegal about the window tint. Additionally, *Hill* pre-dates the Sixth Circuit's decision in *Shank* that supports a finding here that the stop was proper.

individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). In terms of timing, whether an arrest "was constitutionally valid depends … upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Officer Orick testified that he arrested Brown for obstructing official business. Ohio's "Obstructing official business" statute states the following:

> No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

O.R.C. § 2921.31(A). In support of his argument, Brown cites authority for the propositions that "Ohio state courts have repeatedly ruled that the simple failure to answer police questioning, without more, does not amount to an 'affirmative act' under the statute," and that "[a] mere refusal to produce identification will not support a conviction for obstructing official business." (Doc. 27 at PAGEID # 148.)

Although the Court does not disagree with those legal propositions, the Court finds that Officer Orick did have probable cause to believe that Brown had committed a crime in his presence, justifying Brown's arrest. *Wesby*, 130 S. Ct. at 585-86. Brown's argument ignores some relevant facts. Although it is true that Officer Orick sought Brown's identity in order to issue the window tint citation, Brown did not simply refuse to identify himself, answer police questioning, or produce identification. *Bowie*, 2007 Ohio App. LEXIS 3834, at *5 ("To issue the citation for the windows, the police needed to see [defendant's] driver's license"). There was more. In

addition, Brown (1) turned and walked away from Officer Orick in direct defiance of Officer Orick's repeated orders for Brown to come to him, (2) tossed keys to Smith despite being ordered by Officer Orick to put his hands on the Vehicle, and (3) argued with Officer Orick. (Government Exhibit 1.) Ohio courts have found that such conduct can amount to obstructing official business under O.R.C. § 2921.31(A). *See, e.g., State v. Kates*, 169 Ohio App. 3d 766, 865 N.E.2d 66, 75 (Ohio Ct. App. 2006) (where defendant was aware that the officer was trying to detain him for purposes of investigating an accident, but defendant continued to walk away from the officer, the defendant's "act in failing to heed Officer Phillips' orders to stop was an affirmative act that hindered or impeded Officer Phillips in the performance of his official duties in investigating the accident and was sufficient to support the trial court's judgment of conviction for obstructing official business"); *City of Dayton v. Turic*, 2005-Ohio-131, 2005 Ohio App. LEXIS 126, at *15-17 (Ohio Ct. App. 2005) (affirming arrest where defendant refused to identify herself and walked away from police investigating an altercation at a subway despite being asked by police to stop).

Ohio courts have also addressed arguments similar to the one made by Brown. For example, in *State v. Davis*, 140 Ohio App. 3d 751, 749 N.E.2d 322 (Ohio Ct. App. 2000), officers believed that the defendant had crossed an intersection against the light. Officers then ordered the defendant to stop walking and, although he turned to face the officers, the defendant then turned around and continued walking. The defendant was acquitted of the pedestrian violation at trial, but the court held the following regarding whether the officers had probable cause to arrest him for obstructing official business:

> "[U]nder the circumstances of this case, the arrest was lawful. The officers had the right to detain [the defendant] to issue a citation for the alleged pedestrian violation, even though they were prohibited under state law from arresting him for the minor misdemeanor. But the evidence shows that [the defendant] became aware that the officers were trying to detain him and continued to walk away from them. His refusal to stop gave the officers probable cause to believe that he was impeding the

12

performance of their duty in violation of R.C. 2921.31. At that point, the officers had probable cause to arrest him.

*Davis*, 749 N.E.2d at 323-24 (internal citation omitted). Another Ohio appellate court has explained:

> [Defendant] argues that his refusal to state his identity is [sic] does not constitute 'an act,' as required under R.C. 2921.31(A). We agree with [the defendant] that Ohio courts have held that one cannot be guilty of obstructing official business by doing nothing because the text of R.C. 2921.31 specifically requires an offender to act. And, the refusal to produce identification upon request by a police officer will not support a finding of obstructing official business.
>
> Nevertheless, while Ohio courts have concluded that the mere refusal to answer questions does not constitute an 'act,' it has been further held that where an individual also takes affirmative actions to hamper or impede the police from finding out his or her identity, the defendant may be guilty of obstructing official business. …
>
> Therefore, we find that [the defendant's] walking away from Officer O'Connor was an affirmative act that hindered or impeded Officer O'Connor in the performance of his official duties. Further, [the defendant's] persistence in disregarding Officer O'Connor's requests to stop was sufficient evidence for a rational trier of fact to conclude that Brickner-Latham acted with the specific intent to prevent, obstruct, or delay Officer O'Connor's lawful duties.

*State v. Brickner-Latham*, 2006-Ohio-609, 2006 Ohio App. LEXIS 551, at *18-20 (Ohio Ct. App. 2006) (internal citations and quotation marks omitted).

The Court's finding also corresponds with the Sixth Circuit's decision in *Lyons v. City of Xenia*, 417 F.3d 565 (6th Cir. 2005)—a case that Brown cites in support of his argument. The Sixth Circuit held that "[a] person may not be convicted of the offense [of obstructing official business under O.R.C. § 2921.31] simply by doing nothing, such as refusing to provide identification or other information to the police." *Lyons*, 417 F.3d at 574. However, as is the case here, the Sixth Circuit found that the complete picture "includes more than just [defendant's] refusal to provide information," and that the defendant's "conduct would allow a reasonable officer to conclude that she had committed affirmative acts that interfered with police business." *Id*. at

13

574-75 (also holding that "[w]here the overall pattern of behavior is one of resistance … officers may consider the totality of the events and need not point to a single act that rises to the level of obstruction").[2]  In sum, the Court finds that Officer Orick had probable cause to place Brown under arrest without a warrant.

### C. Search of the Vehicle

Brown's final argument is that the search of the Vehicle was unlawful because it "was conducted as a direct result of Mr. Brown's unlawful stop and arrest." (Doc. 27 at PAGEID # 149.)  However, as shown above, the Court does not find the stop or arrest to be unlawful.  Brown also argues that the warrantless, unconsented search of the Vehicle violated the Fourth Amendment and does not fall within any available exception to the warrant requirement. (Doc. 29 at PAGEID # 175.)  In response, the Government argues that the search was proper based on one or more exceptions:  (1) the automobile exception; (2) the plain view exception; (3) the inventory search exception; and/or (4) the inevitable discovery doctrine. (Doc. 28 at PAGEID # 165.)

As noted above, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *United States v. Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (internal quotation marks omitted).  "Inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Id*.  "An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims

---

[2] Once again, the main case relied on by Brown to support his argument is distinguishable.  In *State v. McCrone*, 63 Ohio App. 3d 831, 580 N.E.2d 468, 470-71 (Ohio Ct. App. 1989), the defendant told the officer his name, address, and Social Security number, but simply "refused to produce his driver's license when [the officer] asked for verification of his identity."  The Ohio court found that "[t]he record reflects that [the defendant] did nothing which would be sufficient to constitute an affirmative act which hindered the officer's investigation for purposes of" O.R.C. 2921.31(A).  Therefore, the defendant's motion for acquittal on the charge of obstructing official business was granted.  Here, Brown did more than simply refuse to identify himself or produce identification.

of loss or damage." *Id*.

Brown explains that the inventory search exception only applies if the police have lawfully taken custody of the vehicle. (Doc. 29 at PAGEID # 178, *citing United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007).) His argument that exception does not apply here is that, because "[t]he inventory search of Mr. Brown's vehicle was a direct result of the unlawful stop and arrest," "the police did not have lawful custody of the vehicle, and the search was not justified under the inventory search exception." (Doc. 29 at PAGEID # 178.)

The Court disagrees. The Court has found that the stop and arrest were lawful. Therefore, Brown's argument fails. Additionally, "[i]t is settled law that the police may conduct an inventory search of an automobile that is being impounded without running afoul of the Fourth Amendment." *United States v. Jackson*, 682 F.3d 448, 455 (6th Cir. 2012). "Discretion as to impoundment is permissible so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Hockenberry*, 730 F.3d at 658. "[A]n impoundment decision will not be impermissible simply because alternatives to impoundment might exist." *Id.*

Under Dayton Police Department General Order 3.02-6 (Government Exhibit 4), a police officer may have a vehicle towed when the person in charge of the vehicle is arrested and may conduct a property inventory of the vehicle's contents:

> Members of the Police Department are authorized to remove or direct the removal of a vehicle under any of the following circumstances … [including] [w]henever the driver or person in charge of any vehicle is placed under arrest and taken into custody and detained by police under circumstances which leaves or will leave a vehicle unattended.
>
> …
>
> Inventory of a Towed Vehicle – Arrest Situation
>
> Inventory property inside the vehicle's passenger compartment … prior to towing.

15

… Seize contraband or criminal evidence discovered during an inventory.

DPD Gen. Order 3.02-6 (Government Exhibit 4) at I.A.3, IV.B.1, IV.B.3. In line with that language, Officer Orick testified that if a driver is arrested for a criminal offense, then the vehicle may be towed pursuant to the policy. (Doc. 26 at PAGEID # 117.)

Officer Orick's decision to impound and tow the Vehicle was reasonable under the circumstances. He had arrested the driver of the Vehicle, and the Vehicle was registered to a third party who was not present. Officer Orick acted within his discretion in deciding to tow the vehicle, the decision to impound the Vehicle was reasonable, and, given the circumstances, performance of an inventory search was objectively justifiable and proper. *See Hockenberry*, 730 F.3d at 660; *United States v. Hughes*, F. App'x 533, 540-41 (6th Cir. 2011) (an inventory search is properly held to be lawful when a defendant fails to demonstrate that the officers impounded and inventoried the car in bad faith or for the sole purpose of investigation). The Court finds that the search of the Vehicle's passenger compartment was permissible. The fruits of that search—the handgun—will not be suppressed.[3]

### III. CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Suppress (Doc. 16).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, October 28, 2019.

                                                                                   s/Thomas M. Rose

                                                                                   THOMAS M. ROSE
                                                          UNITED STATES DISTRICT JUDGE

---

[3] Given the Court's finding, it does not reach the Government's other arguments to justify the search of the Vehicle, namely that the automobile exception, plain view exception, and/or inevitable discovery doctrine apply.